UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **Joanny Antonio Martinez Martinez and Digna Fuente Ventura legal parents of D.M.M.F. on behalf of ther minor daughter**<br><br>**Plaintiff**<br><br>**V.**<br><br>**AMERICA CRUISE FERRIES, INC; BAJA FERRIES USA, LLC; INSURANCE COMPANIES A B C;**<br>**JOHN DOE; RICHARD DOE;**<br><br>**Defendants** | **CIVIL NO.**<br><br>**ACTION FOR DAMAGES IN TORT AND UNDER MARITIME LAW**<br><br>**PLAINTIFFS DEMANDS TRIAL BY JURY** |

## COMPLAINT

**TO THE HONORABLE COURT:**

**COMES NOW** plaintiffs, Joanny Antonio Martínez Martínez and Digna Fuente Ventura, legal parents of **D.M.M.F.** on behalf of their minor daughter**,** through their undersigned attorney, and before this Honorable Court respectfully states, alleges and pray as follows:

## I.  INTRODUCTION

1.      Plaintiff bring this cause of action against defendants under 28 USC §1333, federal maritime law, in order to recover the damages suffered due to emotional and physical injuries and other economic damages suffered and endured by Plaintiff as a consequence of the unseaworthininess, gross negligence and negligent acts of Defendants, after a fire that took place in the engine room of the unseaworthy vessel that was carrying passengers despite a considerable history of deficiencies and repairs due to mechanical,

electrical, propulsion and safety issues have been recorded on the vessel owned and operated by Defendants.

## II. PARTIES

2.    **D.M.M.F,** name with her intials since she is only three years old age, is and was, at all relevant times, minor age, daughter of  Joanny Antonio Martinez Martinez and Digna Fuente Ventura, resident of Dominican Republic and US and Dominican Republic citizen, and passenger of the M/F CARIBBEAN FANTASY ("M/F CARIBBEAN") at the time of the facts alleged in this complaint.

3.    Defendant, **AMERICA CRUISE FERRIES, INC.** (hereinafter "ACF") is a profit corporation organized and existing under the laws of the Commonwealth of Puerto Rico, who at all relevant times of this complaint operated the Panama Flag vessel M/F CARIBBEAN on scheduled voyages between Puerto Rico and Dominican Republic. Its principal office is located in Concordia 249, Mayaguez, Puerto Rico, 00680. Its Resident Agent is Nestor Gonzalez Garcia, with the following physical address: Concordia 249, Mayaguez, PR 00680 and mailing address: P.O. Box 6448, Mayaguez, P.R. 00681-6448.

4.    Defendant, **BAJA FERRIES USA, LLC** (hereinafter "Baja USA"): is a privately held company duly registered, organized and existing under the laws of the United States or of the State of Florida with principal offices located in 2601 Bayshore Dr. #1110, Miami, FL 33133. Defendant BAJA is and was at all times relevant hereto the owner of the M/F CARIBBEAN.

5.    Defendants **INSURANCE COMPANIES ABC** is the fictitious name of one or insurance carriers organized and existing under the laws of a state of the United States that as of the date of the facts averred herein had issued and maintained in full force an effect

2

one or more insurance policies on behalf of the herein defendants. Once its or their true name and identity are ascertained, plaintiffs will proceed to amend the instant complaint.

6.      Defendants, **JOHN DOE & RICHARD DOE** are any other unknown individuals or entities who may share liability in this action.

### III. JURISDICTION AND VENUE

7.      This Court has Admiralty and Maritime Jurisdiction and the claim in within the meaning of Fed. R. Civ. P.9 (h). Admiralty and Maritime Jurisdiction is based upon 28 § 1331 and 28 § 1333.

8.      Venue of this action in this judicial district is proper pursuant 28 U.S.C. § 1391 (b), because Defendant is domiciled in this judicial district, and is subject to the personal jurisdiction of the courts in Puerto Rico, and the pertinent facts and events giving rise to the causes of action in this suit took place within this district as the fire aboard the vessel occurred within the jurisdictional water of Puerto Rico near the San Juan Bay, approximately two miles west of the San Juan Harbor on the navigable waters of the United States in connection with traditional maritime activity, i.e. the ferrying of passengers and cargo from Dominican Republic to Puerto Rico, aboard.

### IV. REQUEST FOR JURY TRIAL

9.   Plaintiff demand trial by Jury on all issued so triable under Amendment Seventh of the Constitution.

### IV. FACTS

10. On August 16, 2016, D.M.M.F. boarded the M/F Caribbean for a round trip voyage from the Dominican Republic to Puerto Rico and return, on board M/F Caribbean. The M/F Caribbean was scheduled to depart from Port of Santo Domingo at 7:00 pm of August 16,

2016 and was scheduled to arrive to the Port of San Juan, Puerto Rico at 7:00 am on August 17, 2016.

11.     Upon belief and information M/F Caribbean depart from Port of Santo Domingo approximately thirty minutes late since it had mechanical and/or technical problems.

12.     At around 7:00 a.m. of August 17, 2016 D.M.M.F. perceive an acrid burning smell in her cabin and she was instructed to leave her cabin along with her mother and grandmother.

13.     On the way to the upper deck, D.M.M.F. Plaintiff was exposed to a very dense smoke inhalation since the route that led to the upper deck was close to the area where the smoke was coming. Meanwhile, on the way to the upper deck, a crewmember of the M/F CARIBBEAN crewmember instructed Plaintiff to return to the cabin instead, but finally Plaintiff along with her mother were reinstructed to continue proceeding to the upper deck.

14.     Once Plaintiff reached the upper deck, she found herself in the middle of a chaotic situation with hundred of passengers pushing, shoving and screaming frantically, as fire was consuming the engine room and smoke continued emanating from the M/F CARIBBEAN. The acrid white smoke from the fire onboard filled the air and burned the plaintiff's eyes and throat. The motion of the M/F Caribbean in the ocean swell made things worse, and plaintiff felt nausea and began to sweat profusely.

15.     In the upper deck Plaintiff made a line along with other passengers to receive a life vest, but Plaintiff were not advised that children and elderly would be the first to evacuate the M/F CARIBBEAN until they reached the lifeboat (tender) at the end of the line.

However, once Plaintiff made it to the lifeboat, she noted that it was too crowded, and she got very fearful and anxious. Also, Plaintiff was instructed by a crewmember to get into the crowded lifeboat along with her mother and leave alone her grandmother who also was with her along the trip.

16.     The Plaintiff got an terrible experience during the launching and descending process of the lifeboat, since the rope or automatic pulley system that descend the lifeboat did not function, however, so the crew had to manipulate the pulleys manually in order to launch the lifeboat but the lifeboat was stuck with the ropes. Because of the ocean swell, as it was stuck the lifeboat smashed into the hull of the M/F CARIBBEAN several times. The lifeboat began to crack after each hit with the hull of the M/F CARIBBEAN, and Plaintiff began to scream every time it smashed against the M/F CARIBBEAN. The stuck lifeboat descended by itself every time it hit with the M/F CARIBBEAN since the crewmember has lost the control of the launching operation. Plaintiff was sweating and her eyes were closing and but her mother try to keep her awake. Furthermore, Plaintiff was very nervous and with pain due to the physical injuries suffered during the evacuation process and the hits of the lifeboat against the M/F CARIBBEAN's hull. Plaintiff started crying with anxiety, and she vomited and felt nausea. Several hours later the lifeboat launched into the sea but it could not immediately be released from the cable attached to the M/F CARIBBEAN.

17.     As a result of the pushing, smashing and chaos during the ordeal in the evacuation process and hits of the lifeboat against M/F CARIBBEAN and due to the launching of the lifeboat Plaintiff received physical traumas and injured her body.

18.     Once in the ocean, Plaintiff perceived that the seawater was filling up the lifeboat. Plaintiff fear death because she don't know how to swim.

19.     After what seemed like an eternity, once the lifeboat was launched and separated from the M/F CARIBBEAN, Defendant crew tried to start the lifeboat's engine but it did not start immediately. On that moment plaintiffs desperation and anxiety increased with each passing minute. Passengers were pulling out water from the lifeboat as Plaintiff and co-plaintiff feet were covered with the water that was entering the lifeboat.

20.     After approximately two (2) hours adrift, the US Coast Guard (hereinafter USCG) rescued the lifeboat and maneuvered to take control of the lifeboat. Once the USCG members were advised that the lifeboat was full of water so in that moment USCG decided to take Plaintiff to the USCG recue vessel. After many hours, Plaintiff was kept in that ordeal until they finally arrived to safety in the port of San Juan.

21.     Plaintiff's trip to Puerto Rico was intended to be a vacation, which was ruined by the ordeal of August 17, 2016.

22.     Once on the Pier of San Juan Bay Plaintiff did not receive any medical attention from the Defendants or their agents. Finally, there was no further orientation, or food or water offered to Plaintiff.

## V. DAMAGES

23.     The allegations of the preceding paragraphs are re-alleged as if fully alleged herein.

24.     **Plaintiff D.M.M.F.** suffered and continue suffering physical and psychological injuries as a result of the negligence of the Defendants, such as:

     a.   Harmful smoke inhalation for a period of several hours;

     b.   eye and throat irritation;

     c.   nausea, dehydration and vomiting;

d.   physical traumas in her body;

e.   body stiffness;

f.   leg injuries and pain;

g.   flashbacks from the ordeal;

h.   insomnia and nightmares;

i.   psychological injuries for which she is currently suffering symptoms akin to those suffered by patient with Post Traumatic Stress Disorder;

j.   loss of enjoyment of life;

k.   extreme fear to ocean or traveling by boat or vessels; extreme suffering and pain since she thought she would lost her life; extreme suffering and pain since she thought she would lost her mother and extreme suffering and pain since she thought she would lost her grandmother.

25.      The physical and emotional damages suffered by Plaintiff are estimated in a sum not less than ONE MILLION FIVE HUNDRED THOUSAND DOLLARS ($1,500,000.00).

## V.      NEGLIGENCE AND UNSEAWORTHINESS

26.      The allegations of the preceding paragraphs are re-alleged as if fully set forth in their entirety.

27.      Defendants ACF and Baja USA, as owners and/or operators of the M/F CARIBBEAN, were negligent and breached its duty of care towards Plaintiffs, since they failed to properly maintain the vessel in safe and seaworthy condition, which resulted in an onboard engine-room fire that caused the plaintiffs' damages alleged herein due to the unseaworthy condition of the M/F CARIBBEAN.

28.     The M/F CARIBBEAN had suffered various failures in its, mechanical, propulsion and electrical systems during the voyage immediately prior to the incidents alleged herein. Despite being aware of the failures in its mechanical, propulsion, electrical system, ACF and Baja USA, failed to conduct proper maintenance and refurbishment of its mechanical, propulsion, and electrical system.

29.     The United State Coast Guard had found and reported 76 deficiencies on M/F CARIBBEAN from March 3, 2014 to August 17, 2016.

30.     The Defendants ACF and Baja USA, were negligent and breached their duty of care towards Plaintiffs, since they failed to properly maintain vessel's lifeboats, and other safety equipment and appurtenances of the vessel which contributed to the damages alleged herein.

31.     On February 3, 2016, a USCG inspection performed on board the M/F CARIBBEAN found that the fire safety equipment was missing, lost or stolen, found missing lifeboat inventory, and busted electrical equipment in general.

32.     On August 9, 2016 USCG found six deficiencies in the Fire Safety Category. The deficiencies found included loose, missing, or worn fire safety equipment and appurtenances.

33.     Approximately a month prior to August 17, 2016, events averred herein, the M/F CARIBBEAN underwent extensive repair work in the Port of Tunis, Tunisia, which include extensive work in the engines, as well as other appurtenances.

34.     Once the M/F Caribbean finishing the repair work, it continued from the Port of Tunis of Gibraltar for refueling, before to continue across the Atlantic to Puerto Rico.

However M/F Caribbean was unable to immediately leave the Port of Gibraltar, since it engines failed and had to undergo additional repairs.

35.    After the repairs were performed at the Port of Gibraltar, the M/F Caribbean proceed to the Port of San Juan, Puerto Rico. During the voyage crossing the Atlantic Ocean, its engines failed once again and the M/F Caribbean was adrift for a whole day in the middle of the ocean.

36.    As a result of the engine failure in the middle of the Atlantic Ocean, the crew were able to start on of the M/F Caribbean's engines and had to change course to Port of Santo Domingo, Dominican Republic, since the authorities do not allow a vessel such as the M/F CARIBBEAN to enter the Port of San Juan with just one engine.

37.    Thereafter knew or should have known that the engines of the M/F were in unreliable condition, rendering the vessel unseaworthy given that despite constant repairs they continued to fail.  There, the nature of the repairs and maintenance provided to the vessel and its engines was not as extensive as required.

38.    Furthermore, ACF and Baja USA, were also negligent and breached their duty of care towards plaintiff, for their failure to properly train the vessel's crew in emergency procedures, resulting in unnecessary delays in the evacuation of the vessel and contributing to the damages alleged herein.  Also, ACF and Baja USA did not provide any map, sketch, document or manual about the emergency evacuation procedures indicating what to do in case of an emergency on board, such as a fire.

39.    During the voyage crossing the Atlantic Ocean, M/F CARIBBEAN engine failed and two explosions were heard by the crew of the M/F CARIBBEAN as a result of which the vessel was adrift in the middle of the ocean.

40.     Defendants ACF and Baja USA could not extinguish the fire onboard.

41.     Despite USCG Inspections, only one of the three tenders (lifeboat) that the M/F CARIBBEAN possessed were working during the emergency evacuation. The lifeboat plaintiff boarded was stuck in the ropes and during the descending process after hours of waiting in anxiety and lack of hope of being save it launched to the ocean already cracked. Furthermore, once in the ocean the engine of the lifeboat failed to work.

42.     The crewmembers of the M/F CARBBEAN did not obtain a certificate of Crowd and Crisis Management Training Course, an omission on the part of ACF and Baja USA in their duty of care towards the vessel's passengers.

43.     Defendants ACF and Baja USA were negligent as they failed to heed and correct the deficiencies noted by the USCG and Paris MoU (while in Gibraltar, UK), which resulted in unreasonably unsafe engine room conditions, which rendered the vessel unseaworthy.

44.     Defendants ACF and Baja USA were negligent as the crew of the M/F CARIBBEAN failed to provide to the plaintiffs proper medical attention during and/or after the incident.

45.     Defendants ACF and Baja USA breached their duty of care towards plaintiffs through their actions and omissions, as set forth in this complaint.

46.     Furthermore, the air conditioner of the M/F CARIBBEAN never worked during the course of the trip.

47.     During the evacuation process it was evident that chaos and despair shown that Defendants ACF and Baja USA did not properly train the crew of the M/F CARIBBEAN for emergency and crowd management.

48.     Defendants ACF and Baja USA knew or should have known before August 17, 2016, about the unseaworthy condition of the M/F CARIBBEAN, including defective engines, mechanical, safety deficiencies and the fact that only one of the three tenders of the vessel was working. They should have also known in the exercise of due care and diligences about the lack of emergency evacuation procedures, which rendered the M/F unseaworthy.

49.     Defendants ACF and Baja USA failed to properly maintain the lifeboats (tenders) of M/F CARIBBEAN.

50.     Defendants ACF and Baja USA failed to properly maintain the engine rooms of the M/F CARIBBEAN and other related appurtenances.

51.     Under the general maritime law of the United States, Defendants ACF and Baja USA owed the highest degree of care to their passengers, to ensure that the M/F CARIBBEAN, on which at any given time they transported more than 500 passengers, was in all respects seaworthy, staunch, fit and suitable for its intended purpose, and to ensure that the passengers did not come to any harm during the voyage. Defendants ACF and Baja USA breached said duty of care through the actions and omissions set forth in this complaint.

52.     The actions and omissions of defendants ACF and Baja USA, through fault and/or negligence, caused damages to Plaintiff, in violation of Articles 1802 and 1803 of the PR Civil Code and General Maritime Law entitling plaintiffs to recover for all damages caused as of result of those actions and omissions.

53.     Defendants ACF and Baja USA at all time relevant to the facts of this claim had knowledge of the possible risk of fire due to the poor condition it maintain in the engine room, poor lifeboat maintenance and lack of fire extinguisher and fire sprinkles required to control a fire.

54.     Plaintiff injuries occurred as a proximate result of the unsafe and unseaworthy condition of the vessel, which was managed, operated and/or maintained by Defendants ACF and Baja USA. In addition, said injuries were caused as a proximate result of negligence of the part of the Defendants, its agents, servants and/or employees.

55.     Under Articles 1802 and 1803 of the Civil Code of Puerto Rico, the defendants are jointly and severally liable for all damages caused to the plaintiffs by the negligence of the Defendant, as fully alleged herein.

56.     The injuries and damages suffered by plaintiff would not have happened if not for the combined negligence of all defendants.

57.      The negligence and unseaworthy condition that cause plaintiff injuries and damages were caused by the exclusive fault and/or negligence of defendants ACF and Baja USA.

58.     Defendants ACF and Baja USA failed to properly maintain the M/F CARIBBEAN and failed to heed the safety recommendations and violations from the USCG and Paris MoU.

59.     Defendants ACF and Baja USA maintained an unsafe place for plaintiffs and exposed them to danger while ferrying passengers in a vessel with serious engine, electrical, propulsion and mechanical defects and with lifeboats, mechanical and technical defects as abovementioned.

60.     The M/F CARIBBEAN was unseaworthy and Defendants ACF and Baja USA failed to repair the dangerous conditions existing on board before the August 17, 2016, fire.

61.     Plaintiffs' injuries occurred as a result of the unsafe and unseaworthy conditions of the vessel, that Defendants ACF and Baja USA operated and managed. In addition, the injuries caused to Plaintiffs were caused in whole as a proximate result of negligence of the part of Defendants ACF and Baja USA.

62.     Defendants ACF and Baja USA with temerity and with intention did not perform successfully the repairs that were required by the USCG and Paris MoU.

63.      Defendants ACF and Baja USA failed to maintain a safe premise and seaworthy vessel and should have not started the voyage before correcting all of the safety measures which later on caused the fire and hampered the evacuation procedure. Thus, exposing the passengers of the M/F CARIBBEAN to unsafe conditions that posed a great to risk to their safety.

64.     To the extent the defendants ACF and Baja USA deny liability for the damages herein alleged, they act with obstinacy and temerity and are hence liable for prejudgment interest and attorney's fees.

65.     Defendants ACF and Baja USA were irresponsible and grossly negligent in the operation of the M/F CARIBBEAN, their actions and/or omissions rendered the vessel unseaworthy, particularly as a result of the engine's deficiencies, defective lifeboats, lack of proper fire management and control, defective emergency equipments, lack of crowd and emergency management, lack of training of it crew in emergency and evacuation procedures.

**VI. <u>THIRD CAUSE OF ACTION-AGAINST  INSURANCE COMPANY A B C</u>**

66.     The allegations of the preceding paragraphs are re-alleged as if fully alleged herein.

13

67.     Defendant Insurance Company is directly liable to plaintiff for all injuries suffered as a result of its negligent acts and/or omissions pursuant to the provisions of Articles 20.001 and 20.003 of the Insurance Code of Puerto Rico, 26 L.P.R.A. §§ 2001 and 2003.

## V. RELIEF

**WHEREFORE**, Plaintiff, very respectfully pray that the Honorable Court enter judgment against the defendants severally and jointly and award damages in their favor in the amount of ONE MILLION FIVE HUNDRED THOUSAND DOLLARS $1,500,000.00, described herein:

a.   Physical, Emotional Damages:

   i.   D.M.M.F.; ONE MILLION FIVE HUNDRED THOUSAND DOLLARS ($1,500,000.00) plus costs, interest and attorney's fees;

b.   Award punitive damages against Defendant;

c.   Award Plaintiff pre-judgment and post judgment interest;

d.   Award Plaintiff reasonable attorney fees and cost.

e.   Award past and future medical expenses.

f.   Award such other relief as the Court deems just and proper.

   **RESPECTFULLY SUBMITTED,** in San Juan, Puerto Rico, this day of 30 of October 2016.

   **I HEREBY CERTIFY** that on this date I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system.

*s/ Francisco L. Charles-Gómez*
Francisco L. Charles-Gómez
USDC-PR-303211
Charles-Gómez Law Office, LLC
P.O. Box 1360 Trujillo Alto, P.R. 00977
Tel. (787)-662-0178
Fax. (787)-724-6780
fcharleslaw@gmail.com
